## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

IN RE:                                    *

RODNEY RAMERO PUGH and                    *          CASE NO. 16-80947-WRS
QUACHERYL KNIGHT PUGH,                                Chapter 13
                                          *
          Debtors.
                                          *

_____

SABRINA L. McKINNEY, in her               *
capacity as Standing Chapter 13
Trustee; and CARLY B. WILKINS,            *
as Chapter 7 Trustee of the Estates of
Rickey Jackson, Tony Lee Mason,           *
Joseph A. White, Stacey Ross,
And Jeremy Wallace,                       *

          Plaintiffs,                     *

                                                     ADVERSARY PROCEEDING
vs.                                       *
                                                     CASE NO. 18-08019-WRS
LAW SOLUTIONS CHICAGO, LLC;               *
UPRIGHT LAW, LLC; KEVIN W.
CHERN; JASON ROYCE ALLEN; and             *
EDMUND SCANLAN,
                                          *
          Defendants.
                                          *


## AMENDED COMPLAINT FOR DECLARATORY RELIEF, DISGORGEMENT
## CIVIL PENALTIES, SANCTIONS, AND INJUNCTIVE RELIEF

        Sabrina L. McKinney, Standing Chapter 13 Trustee for the Middle District of Alabama,

and Carly B. Wilkins, Chapter 7 Trustee for the Estates of Rickey Jackson, Tony Mason, Joseph

White, Stacey Ross, and Jeremy Wallace, file this Adversary Proceeding seeking declaratory

relief, disgorgement of fees and expenses plus interest, civil penalties, sanctions, injunctive relief,

1

and attorneys fees and costs against Defendants, Law Solutions Chicago, LLC, UpRight Law, LLC, Kevin W. Chern, Jason Royce Allen, and Edmund Scanlan.

**Jurisdiction and Venue**

1.      This Complaint is filed pursuant to 11 U.S.C. §§ 105, 329, 526(a)(2), (c)(1) and (c)(5), 528(a)(1), 707(b)(4)(C), and Rules 2016(b), 2017 and 7001 of the Federal Rules of Bankruptcy Procedure, Local Rule 1001-2 of the United States Bankruptcy Court for the Middle District of Alabama, Local Rule 83.1(g) of the United States District Court for the Middle District of Alabama, Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 5.1, 5.3, and 5.5 of the Alabama Rules of Professional Conduct, and this Court's inherent authority.

2.      This Court has jurisdiction over the parties and the subject matter of this proceeding under 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). "A request for sanctions arising out of an attorney's conduct in a core proceeding is itself a core proceeding." *In re Williams*, No. 15-71767, 2018 WL 832894, at *17 (Bankr. W.D. Virginia, Feb. 12, 2018), citing *In re French Bourekas, Inc.*, 183 B.R. 695, 696 (Bankr. S.D. N.Y. 1995).

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

**Parties**

4.      Plaintiff Sabrina McKinney is the Standing Chapter 13 Trustee for the Middle District of Alabama.

5.      Plaintiff Carly Wilkins is a Chapter 7 Trustee for the Middle District of Alabama. Plaintiff Carly Wilkins has served as the Chapter 7 Trustee for the Estates of Rickey Jackson, Case No. 17-32767, Tony Mason, Case No. 17-30132, Joseph White, Case No. 17-33347, Stacey Ross, Case No. 17-33353, and Jeremy Wallace, Case No. 18-31024.

2

6. Defendant Law Solutions Chicago, LLC is an Illinois LLC and is registered as a foreign limited liability company with the Alabama Secretary of State. Defendant Law Solutions Chicago, LLC is doing business in Alabama as UpRight Law and as UpRight Law, LLC.

7. Defendant, Upright Law, LLC is a foreign limited liability company and is not registered with the Alabama Secretary of State.

8. Defendant Kevin W. Chern is an attorney licensed by the State of Illinois to practice law. Defendant Chern is not licensed to practice law in Alabama.

9. Defendant Jason Royce Allen is an attorney licensed by the State of Illinois to practice law. Defendant Allen is not licensed to practice law in Alabama.

10. Defendant Edmund Scanlan is the executive director of Law Solutions Chicago. Defendant Scanlan is not licensed as an attorney.

11. The Defendants will hereafter be collectively referred to as "UpRight Law."

### Facts

**A.     Overview of the structure and operations of UpRight Law**

12. UpRight Law, LLC is a d/b/a for Law Solutions Chicago, LLC. Law Solutions Chicago, LLC also operates under various other assumed names, including Jason Allen Law, LLC, Allen Chern Law, Allen Chern, LLC, Allen Chern Law, LLC, and Allen & Associates, LLC.

13. The members of Law Solutions Chicago, LLC are Kevin Chern, Jason Royce Allen, and David Leibowitz, all of whom are members of the Illinois Bar. The managers of Law Solutions Chicago, LLC are Kevin Chern and Jason Allen. Chern is the managing partner of Law Solutions Chicago, LLC, and Allen has been its chief operating officer.

3

14.     Chern has a past business history with Edmund Scanlan, the executive director of Law Solutions Chicago, whose expertise is in internet marketing. Scanlan is not an attorney and is paid a base salary of $200,000 by Law Solutions Chicago as an independent contractor.

15.     Law Solutions Chicago has very few actual employees – the ones it does have are in-house Chicago attorneys – instead leasing most of its employees from Mighty Legal, LLC. Mighty Legal, LLC in turn is owned by Justiva, LLC, which is owned by Chern, Allen, and Scanlan, and some others not parties to this litigation. Justiva, LLC also owns Royce Marketing, LLC, which provides marketing services to Law Solutions Chicago. For all practical purposes, Law Solutions Chicago is the only client of both Mighty Legal and Royce Marketing, and the arrangements with Mighty Legal, Royce Marketing, and ultimately Justiva, allow for significant funds generated by Law Solutions Chicago to flow to Chern, Allen, Scanlan, and others.

16.     UpRight Law solicits clients over the internet and operates a website under the address www.uprightlaw.com. The website provides a phone number that a prospective debtor can call. The website also provides a form where a prospective debtor can submit his or her contact information to be contacted by Upright Law. Either method of communication prompts a call back to the prospective debtor from an UpRight Law "client consultant."

17.     In 2015, UpRight Law had a bifurcated client intake process involving non-attorney personnel in Chicago called "client consultants" and "senior client consultants." Client consultants were junior employees whose job it was to gather basic information and to probe whether the prospect was really interested in filing for bankruptcy, whether the prospect had the ability to pay for services, and whether the prospect was the decision maker for the family. If those qualifications were met, the prospect was passed on to a senior client consultant. Senior client consultants usually were former client consultants who had been promoted after a period of time.

4

18.     In 2017, UpRight Law eliminated the title "client consultant."  All client consultants became "senior client consultants."

19.     Upright Law consultants are not attorneys and are providing legal advice to prospective debtors such as whether the prospective debtors qualify to file bankruptcy and under which chapter the prospective debtors should file.

20.     UpRight Law consultants are paid a base salary plus commission and are trained in a boot-camp style arrangement.  The consultants are provided with a "Sales Play Book," which teaches them a variety of methods to "close" the sale of bankruptcy services to individuals seeking relief.

21.     UpRight Law's Sales Play Book is attached as Exhibit 1.  The Sales Play Book is organized under the following headings:

    I.      Sales Rules & Theory - Close or be Closed
    II.     Pitch Outline
    III.    Pitch Script
    IV.     Moving to the Close
    V.      Objection Handling

22.     The Sales Play Book is replete with high pressure sales tactics to "close" the sale, with the word "close" being used 28 times in this 13 page document.

23.     The Sales Play Book was written by Defendant Jason Allen, and a number of the sales techniques or similar techniques have found their way into "UpRight University" training materials.

24.     In the Sales Play Book, under "Objection Handling," senior client consultants are taught to respond as follows if a prospective debtor says, "I need to pray about it [filing bankruptcy]":

        I appreciate that.  I pray about every decision I make myself.  How
        are you most comfortable praying?  Let's pray together.  I trust God

5

won't mislead either of us. I am willing to accept God's will for the
both of us.

If a prospective debtor says, "I need to talk to my Wife/Husband," senior client consultants are

advised to respond with responses including: "I agree, and you should, but if your husband/wife is

anything like mine, he/she never tells me no when I really need or love something, and I never tell

him/her no." Or, "[b]etter to ask for forgiveness than ask for permission, so let's get you going

right away." Under the Playbook's "Now or Never" pitch, Upright sales people are advised to

represent as follows:

> This is the offer I am making you for right this moment in time, and
> it is a now or never offer as I will not be able to make this available
> tonight, tomorrow, or event [sic] later today. Because we have an
> incentive available to us right now, I am able to offer this to you now
> but it expires when we get off the phone. Let's take advantage of
> the incentive.

If a prospective debtor is already represented by counsel, UpRight Law sales personnel are directed

to "[t]ell the client to fire their local attorney, they can send an email, then they can hire us."

25.     The senior client consultants are paid a base salary, plus a commission tied to how

many "closes" they obtain. Client consultants have a minimum sales requirement to meet or no

bonus will be paid, and they have a specific number or amount of fees they need to collect to

remain employed. Sales numbers are tallied on a 45 day basis and are changed frequently. The

consultants are hired to "sell bankruptcy to people."

26.     UpRight Law's sales personnel are supervised by a non-attorney sales director, and

that sales director reports to Defendant Allen.

27.     UpRight Law's non-attorney consultants examine prospective debtors to see if they

qualify to file bankruptcy and tell prospective debtors that they are a "perfect candidate for filing

bankruptcy." Additionally, the prospective debtors' filing chapter (Chapter 7 or Chapter 13) is

6

pre-selected by the non-attorney consultants before the prospective debtors ever speak to an attorney.

28.     When prospective debtors hire UpRight Law, they then provide UpRight Law with their banking information so that the fee for representation can be drafted from the prospective debtors' bank accounts. The upfront fee charged can range from $1,200 to $1,550 or more.

29.     Once a client is "closed" or sold on filing bankruptcy, and money is received by or payment scheduled to UpRight Law, an "oral retention" agreement is entered into and the client is then transferred to an attorney. No conflicts check is run before a client is presented with the oral retention agreement.[1] The oral retention agreement provides that if the client is seeking to file bankruptcy under a certain chapter of the Bankruptcy Code, UpRight Law "does not represent you until you talk to your local attorney and they accept you as a client," and that until fees are paid in full, UpRight Law will not take action to file the case. The oral retention agreement further advises that the client acknowledges that UpRight Law will be performing work on the client's behalf, such as by fielding creditor calls, answering client questions, and preparing the petition. In addition, "[p]ayments made are direct compensation for that work on your case and are generally nonrefundable as they are earned." The oral retention agreement provides that an electronic retainer agreement will follow, which the client is obligated to sign and return.

30.     Nearly 50% of UpRight Law's clients who are paying over time never complete their payment plans, and these clients' cases are not filed. In general, the fees received by UpRight Law for cases not filed are not shared by UpRight Law with its local "partners."

---

[1] Conflicts checks are done at the local "partner" attorney level, and the local attorneys check for client conflicts only among their own client databases. No conflicts check is run by local attorneys against other local attorney's non-UpRight Law clients. Thus, if a local attorney has his own practice and also works for UpRight Law, no other UpRight attorney can check for conflicts against that attorney's private client database.

31.     Considering the hard sell tactics used by UpRight Law's sales people, UpRight

Law's lack of supervision and control over their salespeople in connection with the unauthorized

practice of law, due in no small part to the commission and sales structure imposed upon them,

and UpRight Law's focus on cash flow over professional responsibility, the Defendants have acted

in bad faith.

### B.     UpRight Law's local "partner" attorneys

32.     UpRight Law's Chicago operation is nothing more than a referral service.  UpRight

Law solicits clients and then refers these clients to local attorneys.  UpRight Law is a marketer of

legal services, not a provider of them.  Only after a prospective debtor's fee is paid in full is the

client's file referred to a so-called local "partner" attorney, who is then paid a portion of the fee

that the debtor paid to UpRight Law.

33.     The prospective debtor frequently does not meet with the local "partner" attorney

until the § 341 meeting of creditors, and in many cases the debtor has never been to the local

attorney's office.

34.     The local "partner" attorneys are not full-time UpRight Law employees.  The local

attorneys are licensed in their home state and generally have their own practices and have limited

signage and advertising indicating they are affiliated with UpRight Law.  The local attorneys often

get a different CM/ECF case filing password for their own practices, and a separate CM/EFC

password for cases filed as an UpRight Law "partner."

35.     The local "partner" attorneys sign a limited partnership agreement that provides

they have no rights in the management of the UpRight Law firm and only a marginal, non-voting

interest in it.  The so-called "partnership" with UpRight Law is for client referral only.  This so-

8

called partnership is the scheme used by UpRight Law to collect a referral fee for signing up bankruptcy clients and then referring them to so-called "partner" attorneys.

36.     While UpRight Law's principal office is physically located in Chicago, it purports to have hundreds of affiliated attorneys – who are referred to, in name only, as partners in their so-called "partnership agreements" – in all 50 states.  UpRight Law used to advertise that it had "local offices nationwide," but it now advertises that it has "attorneys in offices nationwide," presumably to squelch any concerns that it does not have any office space actually leased anywhere but Chicago.  The local "partners" are conducting UpRight business locally out of their individual offices.  UpRight Law's website advertises that it has attorneys in all 50 states.  UpRight Law falsely holds the local attorneys out to the public with the title, style, and attribute of "partner," which appears on the firm's website, letterhead, business cards, and in some cases, office signage.

37.     UpRight Law has at all times prepared in Chicago the Rule 2016 disclosures for the local attorneys and continues to do so.

38.     Although the debtors paid a fee to UpRight Law, the bankruptcy disclosures of compensation filed by Upright Law's so-called "partners" pursuant to 11 U.S.C. § 329(a) and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure do not reflect that payments were made to UpRight Law's headquarters in Chicago.

39.     Moreover, the bankruptcy disclosure of compensation filed pursuant to 11 U.S.C. § 329 and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure states that the local attorney "[has] not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."

40.     In many cases, the bankruptcy disclosure of compensation filed pursuant to 11 U.S.C. § 329 and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure states, "By

agreement with the debtor(s), the above-disclosed fee does not include the following service." UpRight Law's list of exceptions is extensive and includes routine and basic obligations and duties of a bankruptcy attorney. Additionally, UpRight Law's hourly rates and fees charged for excluded services are excessive.

41.     The retainer agreements used by UpRight Law are form agreements, and the hourly rates substantially exceed the market rate for such services in this District. UpRight Law's agreements specify rates regardless of the fees the attorneys actually charged, in violation of Alabama ethics rules. UpRight Law's retainer agreements also contain provisions that funds were earned when paid and exclude routine services that are typically included as part of the flat fee charged by an attorney filing a Chapter 7 or Chapter 13 case in this District.

42.     A "debt relief agency" is required to give an assisted person an executed written contract within 5 business days of first offering bankruptcy assistance to the assisted person. 11 U.S.C. § 528(a)(1). The written contract is required to explain "clearly and conspicuously - (A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment." A debt relief agency is also required to give the assisted person a "copy of the fully executed and completed contract." 11 U.S.C. § 528(a)(2). Defendants are "debt relief agencies," and the debtors are "assisted persons" as defined in § 101(12A) and § 101(3), respectively, of the Bankruptcy Code. UpRight Law clearly provided "bankruptcy assistance" to the debtors before the debtors received a written contract. Defendants violated § 528(a) as to the debtors based on the timing of the delivery of the written contract.

43.     Numerous cases filed by UpRight Law's so-called "partner" attorneys contain inaccuracies in the schedules and/or the Statement of Financial Affairs, including but not limited to failing to list bank accounts, listing a creditor on Schedule D when the debtor no longer has

possession of the collateral, failing to list vehicles on Schedule A/B, listing a reaffirmed debt on the Statement of Financial Affairs even though the debtor no longer has possession of the collateral, and listing creditors on Schedule E/F with a notation reflecting that the debt is secured. Other errors and omissions include the lack of a valid certificate of pre-petition credit counseling pursuant to 11 U.S.C. § 109(g).

**C.**     **UpRight Law cases filed in the Middle District of Alabama**

44.     UpRight Law has filed more than 80 bankruptcy cases in the Middle District, including but not limited to the following cases:

> Tasneem Mohamed – Case No. 18-81003
>
> Shandricka Calloway – Case No. 18-80919
>
> Sylvia Willhite – Case No. 18-80803
>
> Mickey Stoneback – Case No. 18-80708
>
> Paul Smith, Jr. and Annie Smith – Case No. 18-80648
>
> Valorie Motley – Case No. 18-80534
>
> Jessica Boyd – Case No. 18-80509
>
> Andrew Newton – Case No. 18-80392
>
> Ashley Battle – Case No. 18-80285
>
> David Lilly – Case No. 18-80227
>
> Roy Whistle – Case No. 18-80160
>
> Candice Ousley – Case No. 18-80088
>
> David Nelams – Case No. 17-81667
>
> Joella Newsome – Case No. 17-81508
>
> Matthew Black and Mandy Black – Case No. 17-81496

Kimberly Smith – Case No. 17-81465

Patty Williams – Case No. 17-81278

Lauren Wampler – Case No. 17-81207

Derrick Echols – Case No. 17-81163

Mae Hicks – Case No. 17-81087

Tanya Mays – Case No. 17-81018

Michael Gregory – Case No. 17-80812

Monica McFry – Case No. 17-80801

Sandra Warren – Case No. 17-80776

Iva Anglin – Case No. 17-80758

Michael Rountree and Neva Rountree – Case No. 17-80736

Harvey Morse, III and Heather Morse – Case No. 17-80639

James Allred and Bridgett Allred – Case No. 17-80604

Terrell Atkins and Kathleen Atkins – Case No. 17-80566

Donna Hill – Case No. 17-80563

Debbie King – Case No. 17-80533

Delois Pogue – Case No. 17-80525

Jared Goertzen and Amy Goertzen – Case No. 17-80469

Norman Darden – Case No. 17-80425

James Patterson – Case No. 17-80387

Laura Graham – Case No. 17-80327

Jack Taylor – Case No. 17-80037

Robbie Kellum – Case No. 16-81585

Ian Willett – Case No. 16-81572

Louise Mullgrav-Vines – Case No. 16-81370

Randall Cleckler – Case No. 18-31251

Jeremy Wallace – Case No. 18-31024

Valerie Bowden – Case No. 17-33530

James Lewis – Case No. 17-33520

Stacey Ross – Case No. 17-33353

Joseph White – Case No. 17-33347

Clayton Cobb, Jr. and Shirley Cobb – Case No. 17-32876

Chandra Clark – Case No. 17-32873

Linda Bell – Case No. 17-32842

Rickey Jackson – Case No. 17-32767

James Cain – Case No. 17-32361

Xavier Thomas – Case No. 17-12375

Letitia Pate – Case No. 17-12372

Paul Pollan – Case No. 17-12128

Mary McKinnes – Case No. 17-11726

Robert Wilson and Phyllis Wilson – Case No. 16-33607

Sydelle Story – Case No. 17-80547

Jasmine Woods – Case No. 17-80440

Christopher Culverhouse – Case No. 17-80243

Brytne Smith – Case No. 17-80221

Tony Mason – Case No. 17-30132

Joseph Andreas – Case No. 17-30048

Bryan Jordan and Lacey Thrower – Case No. 16-81544

Caroline Stevens – Case No. 16-81413

Bacle Fowler, II – Case No. 16-81169

Benjamin Kinsman – Case No. 16-81102

Zachary Causland and Kaitland Causland – Case No. 16-81072

Michael Miller – Case No. 16-81040

Rodney Pugh and Quacheryl Pugh – Case No. 16-80947

Ricky Stinson and Deborah Stinson – Case No. 16-31535

Jerry Moomey – Case No. 16-31433

Rufus Cotton and Sharon Cotton – Case No. 15-30919

Ellen Yates – Case No. 16-80141

Mary Allen – Case No. 16-80089

Mark Adams – Case No. 16-80049

Bernardino Arroyo – Case No. 16-80048

Mark Deuschle and Teresa Deuschle – Case No. 16-32020

Maria Miller – Case No. 16-30118

Marsha Smith – Case No. 18-10263

Christopher Merritt – Case No. 18-10239

Barbara Owens – Case No. 18-10266

**James Hilary Cain**

45.      UpRight Law represented debtor James Cain in Case No. 17-32361.  Mr. Cain paid

his fee in installments beginning on August 11, 2016 and made his final payment on January 25,

14

2017. UpRight Law did not file Mr. Cain's Chapter 7 petition until August 18, 2017. Mr. Cain does not know whether the individual who advised him to seek bankruptcy relief was an attorney, and Mr. Cain did not meet his local "partner" attorney, Grady Carden, in person until the § 341 meeting of the creditors. The retention agreement is signed by another "partner" attorney, Mari Morrison, as a representative of UpRight Law.

46.     Mr. Cain's retention agreement with UpRight Law provides for additional fees for post-petition "non-base legal services," including representing him in motions for relief from stay (hourly; later defined in the paragraph as $395 per hour for attorney time and $125 per hour for paraprofessional time), monitoring an "asset case" (hourly), and charging a $150 fee for each signed reaffirmation agreement. The agreement also reflects that the fee for amended schedules is $176. Mr. Cain's filed Statement of Intention reflects a reaffirmation agreement to be entered with Chase Mortgage on property for which a homestead exemption was claimed on Schedule C. These services are typically considered routine and among those included in the $1,250 fee charged to Mr. Cain.

47.     At the § 341 meeting, Mr. Cain disclosed an interest in another parcel of real property that was not disclosed on the petition. On October 26, 2017, an Amended Schedule A/B was filed reflecting a value of the property at $30,000 and reflecting the value of Mr. Cain's interest at $15,000. There is a notation "Joint tenant on deed with mother (house is primary residence of his mother). Debtor has not put any money into this property; simply listed as joint tenant so property could bypass probate if something happened to his mother."

48.     Also filed on October 26, 2017 was an Amended Schedule C, which purported to claim an exemption pursuant to Ala. Code § 6-10-6 in the amount of $3,700 on property at 374 McPherson Drive. The trustee filed an objection to this claim of exemption pursuant to LBR 9007.

15

An order granting the objection was entered. The trustee determined that there was no mortgage on the property.

49. A motion was then filed to convert Mr. Cain's case from Chapter 7 to Chapter 13. The motion to convert was granted on December 12, 2017. The Chapter 13 Plan was not filed until February 7, 2018.

50. There were two certificates of credit counseling filed on Mr. Cain's behalf, but both certificates are invalid because they do not comply with the § 109(h) requirement for a credit counseling briefing from an approved provider during the 180-day period ending on the date of filing the petition. One certificate was dated 191 days prior to the date the petition was filed, and the second certificate was dated post-petition. UpRight Law stated in its Response to Motion To Examine Debtor's Transactions with Attorneys that it "sincerely regrets this inadvertent misstep" and proposed that "the only viable way to address the problem is to voluntarily dismiss the case through motion, and to refile it with a § 109(h)-compliant CCC."

51. UpRight Law, instead of proceeding with its proposal to voluntarily dismiss Mr. Cain's case and refile his case with a valid certificate of credit counseling, on April 26, 2018 filed a Motion for Order Validating Credit Counseling Course Nunc Pro Tunc signed by Upright Law attorney Charles Armgardt, who is not licensed to practice law in Alabama. A Certificate of Refund was also filed on April 26, 2018 indicating that UpRight Law had issued a refund of all attorney fees paid to UpRight Law. An Amended Motion for Order Validating Credit Counseling Courses Nunc Pro Tunc was filed by UpRight Law on May 7, 2018, which stated that "moving to dismiss and re-filing a case" would "cause substantial prejudice to the Debtor." The motion was denied by the Court, and Mr. Cain's case was dismissed on May 23, 2018.

16

**Rickey Jackson**

52.     UpRight Law represented debtor Rickey Jackson in Case No. 17-32767. UpRight Law filed a Chapter 7 petition for Mr. Jackson on September 27, 2017. Mr. Jackson found UpRight Law online, and he does not know whether the individual who advised him to seek bankruptcy relief was an attorney. Monthly payments of $300 were drafted by UpRight Law from Mr. Jackson's checking account to pay his fees. Mr. Jackson had no explanation for the delay between paying the attorneys fee and filing fee concluding May 1, 2017 and the filing of his petition almost 5 months later on September 27, 2017.

53.     Mr. Jackson met his local "partner" attorney, Grady Carden, in person for the first time at the § 341 meeting of creditors. Numerous inaccuracies in Mr. Jackson's schedules prepared by UpRight Law were revealed at the § 341 meeting. Schedule I reflected that Mr. Jackson's wife had $0 income, but Mr. Jackson testified at the § 341 meeting that his spouse received social security income of $499 per month. Additionally, there was an incorrect vehicle description listed on the Schedule A/B.

54.     Mr. Jackson's income reflected on the Chapter 7 Statement of Your Current Monthly Income (means test) is $4,091.11 per month, which is the total of the Social Security and V.A. Disability listed on Schedule I. The instructions in Part 1, 9 and 10 read "[d]o not include any amount received that was a benefit under the Social Security Act."

55.     Mr. Jackson's Statement of Intention filed with his petition reflects 3 secured creditors and his intention to retain the property and enter into reaffirmation agreements, including: (a) Cascade Financial Services - property described as 23457 County Road 85 Opp, Alabama 36467, Covington County; reflected on the petition as debtor's residence; and (b) Chase Auto

17

Finance – property described as 2015 Dodge Journey (vehicle); debtor testified at § 341 meeting that the vehicle was necessary for him to go to medical appointments. However, no reaffirmation agreements were filed.

56. A discharge order was issued for Mr. Jackson's case on January 10, 2018. Then on February 2, 2018, a Motion To Examine Debtor's Transactions with Attorneys was filed by the Bankruptcy Administrator. Mr. Jackson's schedules were amended on February 26, 2018, only after the Motion To Examine was filed by the Bankruptcy Administrator. A Certificate of Refund was filed on April 26, 2018 indicating that UpRight Law issued a refund of all attorney fees paid to UpRight Law.

### Chandra Denise Clark

57. UpRight Law represented debtor Chandra Denise Clark in Case No. 17-32873. UpRight Law filed a Chapter 7 petition for Ms. Clark on October 5, 2017. Ms. Clark does not know whether the individual who advised her to seek bankruptcy relief was an attorney. The retention agreement was signed by local "partner" attorney Mari Morrison as a representative of UpRight Law.

58. The UpRight Law retention agreement provides for additional fees for post-petition "non-base legal services," including representing Ms. Clark in motions for relief from stay (hourly), motions to avoid liens ($500), amendments (hourly; later defined as $395 per hour for attorney time and $125 per hour for paraprofessional time), monitoring an "asset case" (hourly), and signed reaffirmation agreements ($150 each). The retention agreement also reflects that the fee for amended schedules is $176. These services are typically considered routine and among those included in the $1,250 fee charged to Ms. Clark.

18

59.     Ms. Clark's Statement of Intention reflects a reaffirmation agreement to be entered for real property for which a homestead exemption was claimed on Schedule C.  However, no reaffirmation agreements were filed.

60.     The name reflected on the filed employee income records is Chandra Denise Turner, but the petition does not disclose any other names used by the debtor in the last 8 years.

61.     There were two certificates of credit counseling filed on Ms. Clark's behalf, but both certificates are invalid; one certificate is dated 203 days prior to the date the petition was filed, and the second certificate is dated post-petition.  UpRight Law admitted that this is "a fundamental problem in the case – the lack of a valid CCC."  UpRight Law stated that it "sincerely regrets this inadvertent misstep, and believes in that in light of the mandatory language of 11 U.S.C § 109(h), the only viable way to address the problem is to voluntarily dismiss the case through motion, and to refile it with a § 109(h)-compliant CCC."

62.     A discharge order was entered on January 17, 2018.  The Bankruptcy Administrator filed a Motion To Examine Debtor's Transactions with Attorneys on February 2, 2018.  A Certificate of Refund was filed on April 26, 2018 indicating that UpRight Law issued a refund of all attorney fees paid to UpRight Law.

### Clayton and Shirley Cobb

63.     UpRight Law represented debtors Clayton Cobb and Shirley Cobb in Case No. 17-32876.  UpRight Law filed a Chapter 7 petition for the Cobbs on October 5, 2017.

64.     The Cobbs testified during the § 341 meeting examination that they found Upright Law online and spoke to a "legal assistant" by telephone with whom they arranged to have monthly payments drafted from their checking account until the attorney fee for filing their bankruptcy was paid in full.  The Cobbs were put in touch with local "partner" attorney Larry Edge, a Mobile

lawyer, but the Cobbs then were referred to another "partner" attorney, Grady Carden. The Cobbs met Mr. Carden in person for the first time at the § 341 meeting.

65. UpRight Law's retention agreement provides for additional fees for post-petition "non-base legal services," including a $150 fee for each signed reaffirmation agreement. These services are typically considered routine and among those included in the $1,500 fee charged to the Cobbs.

66. The response to the Statement of Financial Affairs, Part 7, item 18 regarding transfers made within 2 years before filing states "no." However, during the trustee's examination, the transfer of an interest in property that was not disclosed in the Cobbs' schedules was revealed.

67. The Cobbs' Statement of Intention reflects a reaffirmation agreement to be entered with Whitney Bank and the property is described as a 2016 Chevrolet Equinox. The reaffirmation agreement was filed on February 23, 2018, only after the Bankruptcy Administrator filed a Motion To Examine Debtor's Transactions with Attorneys on January 31, 2018.

68. There were two certificates of credit counseling filed on the Cobbs' behalf, but both certificates are invalid; one certificate is dated 212 days prior to the date the petition was filed, and the second certificate is dated post-petition. UpRight Law admitted that this is "a fundamental problem in the case – the lack of a valid CCC." UpRight Law stated that it "sincerely regrets this inadvertent misstep, and believes in that light of the mandatory language of 11 U.S.C § 109(h), the only viable way to address the problem is to voluntarily dismiss the case through motion, and to refile it with a § 109(h)-compliant CCCs."

69. A Certificate of Refund was filed on April 26, 2018 indicating that UpRight Law issued a refund of all attorney fees paid to UpRight Law.

Case 18-08019   Doc 10   Filed 08/14/18   Entered 08/14/18 14:45:54   Desc Main
Document   Page 20 of 36

**Marsha Smith**

70.     UpRight Law represented debtor Marsha Smith in Case No. 18-10263.  UpRight Law filed a Chapter 7 petition for Ms. Smith on February 15, 2018.

71.     Numerous inaccuracies in Ms. Smith's schedules were revealed at the § 341 meeting of the creditors.  Ms. Smith testified that she had not lived at the 307 Fox Valley Drive address since 2015, yet a homestead exemption was claimed on Schedule C.  The § 341 meeting was continued so that amendments could be filed.  Amended Schedules A/B and C were filed on April 5, 2018.  Amended Schedules A/B, C, and E/F were filed on April 11, 2018.  Schedule C of the April 11th Amendment no longer claimed the Fox Valley Drive property as exempt.  The April 11th Amendment also listed the 2016 Corolla vehicle as an unsecured lease on Schedule E/F rather than a secured purchase money security interest as reflected on Schedule A/B of the petition and the April 5th Amendment.

72.     Ms. Smith's petition was filed by local "partner" attorney Thadius Morgan, Jr., but her retention agreement with UpRight Law was executed by another local attorney, Raphael Gil.

**Christopher Merritt**

73.     UpRight Law represented debtor Christopher Merritt in Case No. 18-10239. UpRight Law filed a Chapter 7 petition for Mr. Merritt on February 12, 2018.

74.     At the § 341 meeting of the creditors, Mr. Merritt testified that he owned a 1992 Crown Victoria vehicle that was not listed on the petition.  Amended Schedules A/B and C were then filed on April 5, 2018 listing the vehicle and claiming it as exempt.

**Caroline Elizabeth Stevens**

75.     UpRight Law represented debtor Caroline Elizabeth Stevens in Case No. 16-81413. UpRight Law filed a Chapter 7 petition for Ms. Stevens on October 25, 2016.  Ms. Stevens does

not know whether the individual at UpRight Law named "Jessica," who explained to her the types of bankruptcy and advised her on which type she should file, was an attorney. Ms. Stevens first met her local "partner" attorney, Mari Morrison, in person at the § 341 meeting of the creditors.

76.     The Statement of Financial Affairs, Part 7, question 16, reflects attorney fees paid to UpRight Law in the amount of $1,200 and a $335 filing fee. The Rule 2016(b) disclosure reflects fees for legal services of $1,200 and contains an extensive list of excluded services in paragraph 7.

77.     Numerous errors and deficiencies were noted in this case. A Clerk's Notice of Deficiency was entered noting that there was a missing declaration of electronic filing with signatures of the debtor and attorney. Additionally, the filed employee income record included Ms. Stevens' social security number.

78.     The petition lists no interest in real property and lists personal property valued at $825. The only secured debt listed is for Security Finance in the amount of $553. The value of the collateral is listed as "unknown," and the description of property that secures the claim is described only as "secured."

79.     Ms. Stevens' net monthly income qualified her for a waiver of the filing fee, but a waiver was not requested by UpRight Law and the fee was paid.

**Tony Lee Mason**

80.     UpRight Law represented debtor Tony Lee Mason in Case No. 17-30132. UpRight Law filed a Chapter 7 petition for Mr. Mason on January 18, 2017.

81.     The Statement of Financial Affairs, Part 7, question 16, reflects attorney fees paid to UpRight Law in the amount of $1,250 and a $335 filing fee. The Rule 2016(b) disclosure

reflects fees for legal services of $1,250 and contains an extensive list of excluded services in paragraph 7.

82.     Numerous errors and deficiencies were noted in this case. Mr. Mason lists no real property and personal property valued at $100. The only secured debt listed on Schedule D is for Colonial Auto Finance in the amount of $6,641. The property is described as a 2001 Buick with a value of $4,000. Mr. Mason's Statement of Financial Affairs Part 4, question 10, reflects the Buick was repossessed in the summer of 2016. The Statement of Intent reflects that the debt to Colonial Auto Finance for the 2001 Buick was to be retained and the debt reaffirmed. Mr. Mason testified at the § 341 meeting that the Buick was wrecked on April 10, 2016 and that insurance proceeds paid the debt. Mr. Mason further testified that he purchased a Nissan Altima on December 27, 2016 and owes approximately $2,900 on that vehicle. The Nissan Altima was not listed on Schedule B or D. Mr. Mason also testified to having bank accounts that were not listed. Additionally, the filed employee income record included Mr. Mason's social security number.

83.     Amended Schedules A/B, C, D, and E/F were filed on April 20, 2017. The Nissan Altima vehicle was listed as well as checking and savings accounts at PNC Bank. No amendments to the Statement of Financial Affairs or the Statement of Intent were filed.

84.     Mr. Mason's case was closed without a discharge on May 19, 2017 for failure to file the requisite financial management course certificate.

**Brytne Smith**

85.     UpRight Law represented debtor Brytne Smith in Case No. 17-80221. UpRight Law filed a Chapter 7 petition for Ms. Smith on February 22, 2017.

Case 18-08019   Doc 10   Filed 08/14/18   Entered 08/14/18 14:45:54   Desc Main
Document    Page 23 of 36

86. Numerous errors and deficiencies were noted in this case. A Clerk's Notice of Deficiency was entered noting that there was a missing declaration of electronic filing with signatures of the debtor and attorney.

87. The Statement of Financial Affairs, Part 7, question 16, states "no" in response to whether payments were made to anyone consulted about seeking bankruptcy. The Rule 2016(b) disclosure certified by local "partner" attorney Mari Morrison reflects $0 paid for legal services. An amended Rule 2016(b) disclosure was filed by Ms. Morrison on May 14, 2017, and it reflects attorney fees paid in the amount of $1,250 and limited exclusion of services in paragraph 7. The amended Statement of Financial Affairs filed on May 14, 2017 reflects in part 7, question 16, payments for consultation in seeking bankruptcy in the amount of $1,585, described as attorney fees and filing fees and describes payments as being made in installments between March 3, 2016 and November 17, 2016. A second amended Rule 2016(b) disclosure was filed by Ms. Morison on June 8, 2017 and reflects attorney fees paid in the amount of $1,250 and limits the exclusions in paragraph 7.

88. The petition reflects no real property and personal property valued at $2,675. Schedule D reflects a claim to Tower Loan with the property described as "secured" in the amount of $1,625, the value of collateral described as "unknown," and the unsecured portion as $1,625. Schedule E/F reflects a claim of "Rvbktrst" (described by Ms. Smith at the § 341 meeting as River Bank & Trust) in the amount of $0 and a notation of "automobile." World Finance Corp. is listed for account number 9101 in the amount of $0 with a notation of "secured," and for account number 0404 in the amount of $0 and a notation of "secured." No bank accounts are disclosed in Schedule A/B, but Ms. Smith's employee income records reflect that a portion of her income from Bill

24

Nichols Home is deposited to MSCU (presumed to be Mutual Savings Credit Union, which has a branch in Alexander City).

### Christopher Culverhouse

89.    UpRight Law represented debtor Christopher Culverhouse in Case No. 17-80243. UpRight Law filed a Chapter 7 petition for Mr. Culverhouse on February 27, 2017.

90.    Numerous errors and deficiencies were noted in this case. A Clerk's Notice of Submission Error was entered noting that a filing fee was required for the filing of amended schedules.

91.    The Statement of Financial Affairs, Part 7, question 16, reflects attorney fees paid to UpRight Law in the amount of $1,250 and a $335 filing fee, and it notes that the fees were paid in installments between January 29, 2016 and November 3, 2016. The Rule 2016(b) disclosure certified by local "partner" attorney Mari Morrison on February 24, 2017 reflects $1,250 paid for legal services. An amended Rule 2016(b) disclosure was filed by Ms. Morrison on June 8, 2017.

92.    The petition lists educational loan debt of $47,699. Mr. Culverhouse testified at the § 341 meeting that he was told by UpRight Law that the bankruptcy would discharge his student loans. The trustee also discovered that Mr. Culverhouse received a tax refund of approximately $1,500 on February 28, 2017, the day after filing the petition, which was not disclosed in the petition. An Amended Schedule A/B and C were filed on June 1, 2017 to reflect the 2016 federal tax refund in the amount of $1,677 and to claim it as exempt.

### Jasmine Rasheedah Woods

93.    UpRight Law represented debtor Jasmine Rasheedah Woods in Case No. 17-80440. UpRight Law filed a Chapter 7 petition for Ms. Woods on April 3, 2017.

94.     The § 341 meeting of the creditors was scheduled for May 25, 2017. Neither Ms. Woods nor her local "partner" attorney, Mari Morrison, appeared. The trustee continued the meeting to June 8, 2017. On that date, Ms. Morrison appeared and advised that Ms. Woods was out of town. Local Bankruptcy Rule 2003-1 sets out the requirements for continuing meetings of creditors. This procedure was not followed by UpRight Law.

95.     Numerous errors and deficiencies were noted in this case. A Clerk's Notice of Deficiency was entered noting that there was a missing declaration of electronic filing with signatures of the debtor and attorney.

96.     The Statement of Financial Affairs, Part 7, question 16, reflects attorney fees paid to UpRight Law in the amount of $1,550 and a $335 filing fee, and it notes that the fees were paid in installments between July 30, 2015 and February 22, 2017. The Rule 2016(b) disclosure certified by local "partner" attorney Mari Morrison on March 25, 2017 reflects $1,550 paid for legal services and limits exclusion to objections to discharge, adversary proceedings, or any contested matter.

97.     The petition reflects that Ms. Woods owns no real property and has personal property valued at $2,478.60, all of which is claimed exempt. There are no secured debts. The unsecured debts represent $32,967 in student loans and $23,118 in other unsecured debts.

**Sydelle Story**

98.     UpRight Law represented debtor Sydelle Story in Case No. 17-80547. UpRight Law filed a Chapter 7 petition for Ms. Story on April 27, 2017.

99.     The Statement of Financial Affairs, Part 7, question 16, reflects attorney fees paid to UpRight Law in the amount of $1,350 and a $335 filing fee, and it notes that the fees were paid in installments between July 5, 2016 and April 3, 2017. The Rule 2016(b) disclosure certified by

local "partner" attorney Mari Morrison on April 19, 2017 reflects $1,350 paid for legal services with significant exclusions of services listed in paragraph 7. An amended Rule 2016(b) disclosure certified by Ms. Morrison on June 8, 2017 reflects $1,350 paid for legal services and removes many excluded services in paragraph 7.

### Jeannine Little

100. On January 1, 2018, a Chapter 13 petition was filed on behalf of Jeannine Little by Terry L. Danford of the Danford Law Firm in Case No. 18-8001. Mr. Danford has no connection to UpRight Law.

101. Ms. Little identified Upright Law Firm in response to Part 7, question 17 of the Statement of Financial Affairs, which asks whether the filer made any payments or transfers of property within one year before filing to anyone who promised to help the filer deal with creditors or to make payments to creditors. Upright Law Firm was identified under "Person Who Was Paid Address," and under "Description and value of any property transferred," the response states: "Debtor was making payments to this firm and when she had paid $1,750.00, they were going to file a bankruptcy case for the debtor." The Statement of Financial Affairs further indicates that payment of $600 was made by Ms. Little on December 15, 2017.

102. Ms. Little obtained representation by Mr. Danford before she finished her payments to UpRight Law in order to have her petition filed before her property was foreclosed.

103. On April 25, 2018 a Motion To Examine Debtor's Transaction with Attorneys Law Solutions Chicago d/b/a Upright Law LLC was filed asserting that Defendants were in violation of Alabama Rules of Professional Conduct 1.5 and 1.16 for failing to return unearned fees. While the Defendants filed a Certificate of Refund on May 14, 2018 for Ms. Little, many other Alabama consumers have paid Defendants for legal services that were never rendered.

**Barbara Owens**

104.   UpRight Law represented debtor Barbara Owens in Case No. 18-10266.  UpRight Law filed a Chapter 7 petition for Ms. Owens on February 15, 2018.

105.   Ms. Owens' income qualified her for a waiver of the $335 filing fee, but a waiver was not requested by UpRight Law and the fee was paid.

## COUNT I – VIOLATIONS OF § 329 AND RULE 2016(b)

106.   This is an action seeking declaratory relief, disgorgement of fees and expenses plus interest, civil penalties, sanctions, injunctive relief, and attorneys fees and costs against Defendants pursuant to 11 U.S.C. §§ 105 and 329, and Rules 2016(b) and 2017 of the Federal Rules of Bankruptcy Procedure, and this Court's inherent authority.

107.   Defendants are attorneys as defined by 11 U.S.C. § 101(4).

108.   Defendants are required by 11 U.S.C. § 329 and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure to file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made within one year of the filing of the petition, for services rendered in connection with the case, and the source of the compensation should be disclosed.

109.   The Rule 2016(b) disclosures in Defendants' bankruptcy filings represent that fees paid by the debtor are paid to the local "partner" attorney, yet in question 16 of the Statement of Financial Affairs, the disclosure is that fees are paid directly to UpRight Law.

110.   Question 5 of the Rule 2016(b) disclosure filed in Defendants' cases is marked to state that the local "partner" attorney has not agreed to share the disclosed compensation with any other person unless they are a member or associate of his or her firm.

28

111.    The so-called local "partner" attorneys are not partners of UpRight Law but are "partners" in name only, bearing none of the typical rights and liabilities associated with a partner in a firm.  If an attorney is sharing compensation with a person who is not a member or associate of the same firm, the Rule 2016(b) disclosure requires that the specifics of the fee sharing arrangement be disclosed and filed along with the disclosure.  UpRight Law is avoiding this disclosure requirement by falsely designating the local attorneys as "partners."

112.    Defendants' conduct constitutes an abuse of the bankruptcy process.

### COUNT II – SCOPE OF SERVICES AND REASONABLENESS OF FEES

113.    If compensation is excessive, a court may cancel a debtor's agreement with counsel for compensation or order the return of such payment to the estate or entity that made the payment.

114.    Illegal and unethical conduct can serve as a factor considered in analyzing the reasonableness of legal fees paid by a debtor.

115.    The Defendants' conduct associated with bankruptcy cases filed in this District was illegal and unethical.

116.    Defendants' conduct constitutes an abuse of the bankruptcy process.

117.    Any fee is unreasonable in light of the misconduct of the Defendants.

118.    This is an action seeking declaratory relief, disgorgement of fees and expenses plus interest, civil penalties, sanctions, injunctive relief, and attorneys fees and costs against Defendants pursuant to 11 U.S.C. §§ 105, 329, and §526, and Rules 2016(b) and 2017 of the Federal Rules of Bankruptcy Procedure, and this Court's inherent authority.

119.    The Bankruptcy Code provides that "any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements" of 11 U.S.C. §§ 526, 527, or 528 "shall be void and may not be enforced by any

Federal or State court or by any other person, other than such assisted person." 11 U.S.C. § 526(c)(1).

120.    Cause exists to void the UpRight Law fee agreements pursuant to 11 U.S.C. § 525(c)(1) because the fee agreements with the debtors did not comply with the material requirements of 11 U.S.C. §§ 526, 527, or 528. Among other things, the fee agreements required under 11 U.S.C §§ 527 were provided to the debtors more than 1 month after the Defendants provided bankruptcy assistance, as that term is defined in 11 U.S.C. § 101(4A), to the debtors. The disclosures provided by the Defendants also were provided more than 1 month after the first bankruptcy assistance was provided.

121.    Defendants have excluded from the flat fee certain routine services, as set forth in the above-referenced paragraphs. Such routine services should be included within the flat fee arrangement, as such services are necessary and required for proper representation of debtors.

122.    This exclusion of routine and basic services from the flat fee necessarily leads to the fee exceeding the reasonable value of the services rendered and provided and is in direct violation of this Court's Standing Order on Compensation of Attorneys in Chapter 13 cases dated June 14, 2013.

123.    The hourly rates and fees charged for excluded services are excessive.

124.    All fees and expenses paid to the Defendants, plus interest, should be disgorged pursuant to 11 U.S.C. § 105.

## COUNT III – VIOLATION OF 11 U.S.C. § 707(b)(4)(C)

125.    This is an action seeking declaratory relief and to determine appropriate sanctions against Defendants, plus attorneys fees and costs, pursuant to 11 U.S.C. §§ 105, 707(b)(4)(C) and (D) and this Court's inherent authority.

30

126. Under 11 U.S.C. § 707(b)(4)(C), the signature of an attorney is a certification that the attorney has "performed a reasonable investigation" and "determined that the petition . . . is well grounded in fact."

127. Under 11 U.S.C. § 707(b)(4)(D), the signature of an attorney on a petition is a "certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect."

128. Defendants failed to perform a "reasonable investigation" or make a reasonable inquiry prior to filing the petitions and schedules.

129. Defendants knew or should have known that the disclosures and schedules had incorrect information.

130. Defendants' conduct constitutes an abuse of the bankruptcy process.

## COUNT IV – VIOLATIONS OF 11 U.S.C. §§ 526(c)(1) and (c)(5) and 528(a)(1)

131. This is an action seeking declaratory relief, civil penalties, sanctions, injunctive relief, and attorneys fees and costs against Defendants pursuant to 11 U.S.C. §§ 526(c)(1), (c)(2), and (c)(5), 528 (a)(1), and this Court's inherent authority.

132. 11 U.S.C. § 528(a)(1) states that a debt relief agency shall "execute a written contract with such assisted person that explains clearly and conspicuously . . . (B) the fees or charges for such services, and the terms of payment . . . ."

133. Defendants violated 11 U.S.C. § 528(a)(1) by obligating debtors through the contract to pay all fees and expenses associated with the bankruptcy case and requiring that a portion of those fees be paid up front prior to any services being rendered.

31

134.     Pursuant to 11 U.S.C. §526(c)(2), the Defendants shall be liable to any assisted person in the amount of the fees charged if found to have violated the Code and Rules with respect to their representation of the assisted person.

135.     Defendants' conduct constitutes an abuse of the bankruptcy process.

## COUNT V - VIOLATIONS OF 11 U.S.C. §§526(a)(2)

136.     This is an action seeking declaratory relief, the imposition of appropriate sanctions, imposition of civil penalties, injunctive relief, and attorneys fees and costs against the Defendants pursuant to 11 U.S.C. §§ 105, 526(a)(2) and (c)(5), and this Court's inherent authority.

137.     The Defendants are debt relief agencies as defined by 11 U.S.C. § 101(12A).

138.     The debtors are assisted persons as defined by 11 U.S.C. § 101(3).

139.     Pursuant to 11 U.S.C. § 526(a)(2), a debt relief agency "shall not . . . make any statement or counsel or advise any assisted person . . . to make a statement in a document filed in a case . . . that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading."

140.     The Defendants violated 11 U.S.C. § 526(a)(2) by filing documents which contain statements that are "untrue and misleading" and with "the exercise of reasonable care, should have been known" to be such.

141.     The Defendants violated 11 U.S.C. § 526(a)(2) and imposition of a civil penalty and injunction are warranted under 11 U.S.C. § 526(c)(5).

142.     Defendants' conduct constitutes an abuse of the bankruptcy process.

## COUNT VI – VIOLATIONS OF THE ALABAMA RULES OF PROFESSIONAL CONDUCT AND THE UNAUTHORIZED PRACTICE OF LAW

143.     This is an action seeking declaratory relief and sanctions, plus attorneys fees and costs, pursuant to 11 U.S.C. § 105, Local Rule 1001-2 of the United States Bankruptcy Court for

32

the Middle District of Alabama, Local Rule 83.1(g) of the United States District Court for the Middle District of Alabama, Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 5.1, 5.3, and 5.5 of the Alabama Rules of Professional Conduct, and this Court's inherent authority.

144. The Alabama Rules of Professional Conduct are applicable to attorneys practicing before this Court under Local Rule 1001-2 of the United States Bankruptcy Court for the Middle District of Alabama and under Local Rule 83.1(g) of the United States District Court for the Middle District of Alabama.

145. Defendants violated the following provisions of the Alabama Rules of Professional Conduct:

a. Rule 1.1 states that a "lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Defendants violated this Rule due to the errors, omissions, and oversights of Defendants in their representation of their clients.

b. Rule 1.2 states that a "lawyer may limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent." Defendants violated this Rule in that the limited scope of representation was unreasonable.

c. Rule 1.3 state that a "lawyer shall not willfully neglect a legal matter entrusted to him." Defendants violated this Rule due to their willful lack of diligence in the representation of their clients.

d. Rule 1.4 states that:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

33

(b)     A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Defendants violated this Rule due to their lack of sufficient communication with their clients.

e.     Rule 1.5 states that a "lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee." Defendants violated this Rule in the limited scope of representation, the flat fees charged, the excessive non-base fee rates, and collecting fees where work was not performed or cases were never filed.

f.     Rule 1.15, which requires fees to be placed into an IOLTA account. Defendants violated this Rule by failing to consistently place fees into an IOLTA account.

g.     Rule 5.1 states that:

(a)     A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

(b)     A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

Defendants violated this Rule by failing to adequately supervise their firm's lawyers to ensure that their actions conformed with the Rules of Professional Conduct.

h.     Rule 5.3 states that:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

34

(a)     A partner in a law firm shall make reasonable efforts to ensure that the firm

has in effect measures giving reasonable assurance that the person's conduct is

compatible with the professional obligations of the lawyer;

(b)     A lawyer having direct supervisory authority over the nonlawyer shall make

reasonable efforts to ensure that the person's conduct is compatible with the

professional obligations of the lawyer.

Defendants violated this Rule by failing to adequately supervise the actions of nonlawyer

employees of  UpRight Law and the nonlawyer employees of the local "partner" attorneys.

i.     Rule 5.5 states that a "lawyer shall not . . . assist a person who is not a member

of the bar in performance of an activity that constitutes the unauthorized practice of law."

Defendants violated this Rule in that the local "partner" attorneys assisted UpRight Law

and its employees and agents in the unauthorized practice of law.

146.     Defendants, and their employees and agents, through their actions, have engaged

in the unauthorized practice of law as defined by Alabama Code of 1975 § 34-3-6.

147.     Defendants' conduct constitutes an abuse of the bankruptcy process.

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment as follows:

I.     Declaring that the Defendants engaged in a clear and consistent pattern and practice

of violations of the Bankruptcy Code, the Bankruptcy Rules and the Alabama Rules

of Professional Conduct.

II.     Assessing a monetary sanction against the Defendants to include the refund of all

attorneys fees and costs incurred by debtors and prospective debtors, plus interest,

and a civil penalty sufficient to deter abusive practices.

35

III.    Permanently enjoining the Defendants from directly or indirectly filing any bankruptcy cases in the Middle District of Alabama.

IV.    Awarding attorneys fees and costs to Plaintiffs and assessing those attorneys fees and costs to the Defendants.

V.    Granting such other relief that the Court deems appropriate and necessary to deter such misconduct and similar schemes in the future.

STEVE OLEN (OLENS7621)
Cunningham Bounds, LLC
Post Office Box 66705
Mobile, Alabama 36660
251-471-6191
251-479-1031 (fax)

Attorneys for Plaintiffs